TROUTMAN SANDERS LLP
Jessica Lohr, Bar No. 302348
jessica.lohr@troutman.com
5 Park Plaza, Suite 1400
Irvine, CA  92614
Telephone: 858-509-6000
Facsimile:  858-509-6040

Lauren Geiser, Bar No. 313594
lauren.geiser@troutman.com
1001 Haxall Point, 15th Floor
Richmond, VA 23219
Telephone: 804-697-1379
Facsimile: 804-697-1339

*Attorneys for Defendant*
*Portfolio Recovery Associates, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS PARKER,<br><br>                    Plaintiff,<br><br>v.<br><br>PORTFOLIO RECOVERY<br>ASSOCIATES, LLC,<br><br>                    Defendant. | Case No.  8:18-cv-02103-JVS-JDE<br><br>**DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:    July 15, 2019<br>Time:    1:30 PM<br>Judge:  Hon. James V. Selna<br>           Courtroom: 10C |

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................ 1

STANDARD OF REVIEW ................................................................................. 3

ARGUMENT ...................................................................................................... 3

    I.     The TCPA is a content-based restriction subject to strict scrutiny. ........................................................................................... 4

    II.    The call restrictions cannot withstand strict scrutiny. ........................ 7

         A.    The call restrictions do not advance a "compelling" government interest. ............................................................... 7

         B.    The call restrictions are not narrowly tailored. .......................... 9

    III.   The exemptions cannot be severed to salvage the constitutionality of the call restrictions. ............................................. 12

CONCLUSION ................................................................................................. 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Ass'n of Political Consultants, Inc. v. FCC*,
__ F.3d __, 2019 U.S. App. LEXIS 12127 (Apr. 24, 2019) ........................*passim*

*Am. Ass'n of Political Consultants v. Sessions*,
323 F. Supp. 3d 737 (E.D.N.C. 2018) ................................................................. 2, 5

*Arizona v. Tohono O'odham Nation*,
818 F.3d 549 (9th Cir. 2016) ..................................................................................... 3

*Arkansas Writers' Project, Inc. v. Ragland*,
481 U.S. 221 (1987) .................................................................................................. 12

*Ashcroft v. Free Speech Coalition*,
535 U.S. 234 (2002) ................................................................................................... 1

*Brickman v. Facebook, Inc.*,
230 F. Supp. 3d 1036 (N.D. Cal. 2017)............................................................... 2, 5

*Carey v. Brown*,
447 U.S. 455 (1980) .........................................................................................*passim*

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................... 3

*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993) .................................................................................................... 8

*City of Lakewood v. Plain Dealer Publ'g Co.*,
486 U.S. 750 (1988) .................................................................................................... 6

Declaratory Ruling and Order,
CG Docket No. 02-278, WC Docket No. 07-135, 30 FCC Rcd.
7961 (2015)....................................................................................................... 6, 7, 14

*Desert Outdoor Advertising v. City of Moreno Valley*,
103 F.3d 814 (9th Cir. 1996) .................................................................................. 11

*DISH Network Corp. v. FCC*,
  653 F.3d 771 (9th Cir. 2011) ................................................................... 7

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*,
  132 F.3d 526 (9th Cir. 1997) ................................................................... 3

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
  561 U.S. 477 (2010) ...................................................................... 14, 15

*Frisby v. Schultz*,
  487 U.S. 474 (1988) ............................................................................... 8

*Gallion v. Charter Commc'ns, Inc.*,
  287 F. Supp. 3d 920 (S.D. Cal. 2018) ................................................ 2, 5

*Gallion v. Charter Commc'ns*,
  No. 18-55667 (9th Cir. Mar. 8, 2018) .............................................. 2, 13

*Greenley v. Laborers' Int'l Union of N. Am.*,
  271 F. Supp. 3d 1128 (D. Minn. 2017) ............................................. 2, 5

*Heckler v. Matthews*,
  465 U.S. 728 (1984) ............................................................................. 13

*Holt v. Facebook Inc.*,
  240 F. Supp. 3d 1021 (N.D. Cal. 2017)............................................. 2, 5

*Hopper v. City of Pasco*,
  241 F.3d 1067 (9th Cir. 2001) ............................................................... 6

*Hoye v. City of Oakland*,
  653 F.3d 835 (9th Cir. 2011) ............................................................. 7, 8

*Italian Colors Rest. v. Becerra*,
  878 F.3d at 1178 (9th Cir. 2018) ........................................................ 10

*Kirkeby v. Furness*,
  92 F.3d 655 (8th Cir. 1996) ................................................................... 8

*Long Beach Area Peace Network v. City of Long Beach*,
  574 F.3d 1011 (9th Cir. 2009) ............................................................... 6

*Lucia v. SEC*,
  138 S. Ct. 2044 (2018) ........................................................................ 14

DEFENDANT'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR JUDGMENT
ON THE PLEADINGS

*McCutcheon v. FEC*,
  572 U.S. 185 (2014) ........................................................................... 7

*Mejia v. Time Warner Cable Inc.*,
  Nos. 15-CV-6445 (JPO), 15-CV-6518 (JPO), 2017 U.S. Dist.
  LEXIS 120445 (S.D.N.Y. Aug. 1, 2017) .......................................... 2, 5

*Metromedia, Inc. v. San Diego*,
  453 U.S. 490 (1981) .......................................................................... 11

*Meza v. Sirious XM Radio, Inc.*,
  No. 17-cv-2252, 2018 U.S. Dist. LEXIS 164601 (S.D. Cal. Sep. 25,
  2018) ................................................................................................. 4

*Mims v. Arrow Fin. Servs., LLC*,
  565 U.S. 368 (2012) ........................................................................... 8

*Nat'l Advert. Co. v. City of Orange*,
  861 F.2d 246 (9th Cir. 1988) .............................................................. 8

*Perry v. L.A. Police Dep't*,
  121 F.3d 1365 (9th Cir. 1997) ........................................... 8, 10, 13, 14

*Police Department of Chicago v. Mosley*,
  408 U.S. 92 (1972) ....................................................................... 12, 13

*R.A.V. v. St. Paul*,
  505 U.S. 377 (1992) ........................................................................... 2

*Rappa v. New Castle Cnty.*,
  18 F.3d 1043 (3d Cir. 1994) ............................................................. 13

*Reed v. Town of Gilbert*,
  135 S. Ct. 2218 (2015) ............................................................... *passim*

*Regan v. Time, Inc.*,
  468 U.S. 641 (1984) ........................................................................... 4

*Republican Party v. White*,
  536 U.S. 765 (2002) ......................................................................... 11

*In re Rules & Regulations Implementing the TCPA*,
  31 FCC Rcd. 9074 (Aug. 11, 2016) .............................................. 9, 10

DEFENDANT'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR JUDGMENT
ON THE PLEADINGS

*Rules and Regulations Implementing the TCPA,*
  31 FCC Rcd 9054 (2016) ..................................................................... 14

*Rules and Regulations Implementing the Telephone Consumer*
  *Protection Act of 1991, Cargo Airline Association Petition for*
  *Expedited Declaratory Ruling*, Order, CG Docket No. 02-278, 29
  FCC Rcd 3432 (2014) ............................................................................ 6

*Serv. Emps. Int'l Union v. Fair Political Practices Comm'n,*
  955 F.2d 1312 (9th Cir. 1992) .............................................................. 9

*Siefert v. Alexander,*
  608 F.3d 974 (7th Cir. 2010) (Rovner, J., dissenting) ........................... 7

*Tatung Co. v. Shu Tze Hsu,*
  217 F. Supp. 3d 1138, 1150 (C.D. Cal. 2016) ....................................... 3

*United States v. Playboy Entm't Grp., Inc.,*
  529 U.S. 803 (2000) ....................................................................... 2, 13

*Virginia v. American Booksellers Ass'n,*
  484 U.S. 383 (1988) ............................................................................ 15

*Williams-Yulee v. Florida Bar,*
  135 S. Ct. 1656 (2015) ................................................................... 9, 11

**Statutes**

47 U.S.C. § 227(b)(1)(A)(iii) ............................................................... *passim*

47 U.S.C. § 227(b)(2)(B) ............................................................................ 5

47 U.S.C. § 227(b)(2)(C) ............................................................................ 6

**Other Authorities**

Fed. R. Civ. P. 12(c) .................................................................................. 3

Fed. R. Civ. P. 56(a) .................................................................................. 3

U.S. Const. Amend. 1 ................................................................................ 1

DEFENDANT'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR JUDGMENT
ON THE PLEADINGS

Defendant, Portfolio Recovery Associates, LLC ("PRA"), by counsel, hereby submits this memorandum in support of its Motion for Judgment on the Pleadings or, alternatively, for Summary Judgment.

## INTRODUCTION

Plaintiff's Complaint relies on a single section of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii), which purports to make it unlawful:

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any *automated telephone dialing system* or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, *unless such call is made solely to collect a debt owed to or guaranteed by the United States*.

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). But the statute Plaintiff under which attempts to hold PRA liable violates the First Amendment.

The First Amendment commands "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend. 1. "As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 245 (2002). As part of this command, the government may not favor speech based on the content it conveys. The TCPA, as it is currently being applied, is the single broadest restriction on constitutionally-protected speech in our country. Yet, on its face, the statute unconstitutionally favors certain categories of protected speech over others because it bans some calls but not others, depending on the content of the call. For example, a call made by a private debt collector to collect on a private mortgage that is backed by the government is subject to no restrictions. Yet, a call made by that same private debt collector to collect on a private mortgage not backed by the government is

subject to restrictions. Every district court, including this one, considering an attack on the constitutionality of the TCPA has concluded the government-backed debt exception highlighted above renders it a content-based restriction on speech, subject to strict scrutiny and thus "presumptively invalid." *See Gallion v. Charter Commc'ns, Inc.*, 287 F. Supp. 3d 920, 927-28 (C.D. Cal. 2018) ("[T]he debt collection exception requires a court to examine the content of the message in order to determine if a violation of the TCPA has occurred, rendering section 227(b)(1)(A)(iii) content-based on its face and therefore subject to strict scrutiny.") (quotations omitted)[1]; *see also United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 817 (2000) ("Content-based regulations are presumptively invalid.") (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992)).

Strict scrutiny is the courts' (and the people's) last line of defense to prevent the government from intruding upon one of our most basic rights—freedom of speech. Accordingly, it is an exacting standard requiring both a compelling government interest and a statute narrowly tailored to achieve that compelling interest. Indeed, the Fourth Circuit, the only appellate court to rule on the issue, recently found the call restriction was a content-based restriction that could not survive strict scrutiny. *Am. Ass'n of Political Consultants, Inc. v. FCC*, __ F.3d __, 2019 U.S. App. LEXIS 12127 (Apr. 24, 2019) ("*AAPC*"). And, this very issue is currently pending before the Ninth Circuit Court of Appeals, having now been fully briefed and argued. *See Gallion v. Charter Commc'ns*, No. 18-55667 (9th Cir. Mar. 8, 2018). At oral argument, the panel expressed serious doubt that the call restriction could survive strict scrutiny.

---

[1]    *See also Am. Ass'n of Political Consultants v. Sessions*, 323 F. Supp. 3d 737, 744 (E.D.N.C. 2018); *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1145 (D. Minn. 2017); *Mejia v. Time Warner Cable Inc.*, Nos. 15-CV-6445 (JPO), 15-CV-6518 (JPO), 2017 U.S. Dist. LEXIS 120445, at *41-42 (S.D.N.Y. Aug. 1, 2017); *Holt v. Facebook Inc.*, 240 F. Supp. 3d 1021, 1032 (N.D. Cal. 2017); *Brickman v. Facebook, Inc.*, 230 F. Supp. 3d 1036, 1043-44 (N.D. Cal. 2017).

Because this restriction on speech cannot survive strict scrutiny, the call restriction must be struck down. The alternative – to sever the offending exemptions – would result in the TCPA prohibiting *more* protected speech. Rather than judicially creating an additional regulation on speech that does not exist today, the Court must strike down the unconstitutional call restriction and grant judgment in favor of PRA.

<u>**STANDARD OF REVIEW**</u>

Federal Rule of Civil Procedure 12(c) provides that a party may bring a motion for judgment on the pleadings after the pleadings are closed and if there is no delay to the trial. A district court may grant a motion for judgment on the pleadings under Rule 12(c) when, taking all allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law. *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 528 (9th Cir. 1997).

Here, PRA filed its Answer to the Complaint on December 21, 2018. (Dkt. No. 10.) Trial is not scheduled to occur until September 17, 2019. (Dkt. No. 18-1.) For the reasons set forth below, PRA is entitled to judgment on the pleadings.[2]

<u>**ARGUMENT**</u>

Judgment should be granted in favor of PRA because the statute under which Plaintiff attempts to hold PRA liable is an unconstitutional restriction on speech that cannot stand. In assessing the constitutionality of the TCPA's restriction on speech,

---

[2]   Alternatively, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1150 (C.D. Cal. 2016). "Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 555 (9th Cir. 2016) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). As described herein, the TCPA is unconstitutional on its face, and no facts material to question of the TCPA's constitutionality are in dispute. Accordingly, PRA is entitled to judgment as a matter of law.

the Court must first determine whether it is a content-based speech restriction subject to strict scrutiny or a content-neutral speech restriction subject to intermediate scrutiny. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015). The Court must then determine whether the restriction survives the applicable level of scrutiny. *See id.* at 2231. If it does not, the Court must then determine whether to strike the entire restriction or sever the flawed exemption. *See Regan v. Time, Inc.*, 468 U.S. 641, 652–53 (1984). The call restriction fails strict scrutiny and must be struck in its entirety. Thus, PRA cannot be held liable for the calls alleged. *See Meza v. Sirious XM Radio, Inc.*, No. 17-cv-2252, 2018 U.S. Dist. LEXIS 164601, at *14 (S.D. Cal. Sep. 25, 2018) ("If the Ninth Circuit agrees with defendants that 47 U.S.C. § 227(b)(1)(A)(iii) is unconstitutional, then the Meza's ATDS allegations would have to be dismissed as they allege both of their cellular telephones were called in violation of this provision.").

## I.    The TCPA is a content-based restriction subject to strict scrutiny.

In the context of the First Amendment, a statutory provision constitutes a content-based speech restriction if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 135 at 2227. This inquiry first requires the Court to determine whether the text of the statute distinguishes between speech based on content or subject matter. *See id.* at 2227. If so, strict scrutiny applies "regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* at 2227-28.

The TCPA discriminates based on the content of a call on its face. Automated telephone dialing system ("ATDS") calls to cellular phones made solely to collect on government-backed debts or certain other exempted categories do not violate the call restriction. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Yet, ATDS calls to cellular phones that deal with other subjects, such as commercial debt, are prohibited. *Id.* "A proper application of the debt-collection exemption therefore 'depends entirely on the

- 4 -

communicative content of the call' and . . . constitutes a content-based restriction that is subject to strict scrutiny." *AAPC*, 2019 U.S. App. LEXIS 12127, at *6–7 (quoting *Reed*, 135 S. Ct. at 2227). Accordingly, under a plain application of the statute, a private debt collection agency could use an ATDS to call the same consumer twice in a row, the first to collect a private, government-backed student loan, and the second to collect a commercial debt (or even a private student loan not backed by the government). The second would be subject to the TCPA, but the first would not. This is an undeniable "facial" content-based restriction that "draws distinctions based on the message the speaker conveys" and is subject to strict scrutiny, regardless of Congress's motive, content-neutral justification, or lack of animus toward the ideas expressed. *Reed*, 135 S. Ct. at 2227-28 (stating that content-based distinctions are "obvious" where they "defin[e] regulated speech by particular subject matter"). Like the Fourth Circuit's recent decision in *AAPC*, district courts considering the exemption have routinely come to the conclusion that the ATDS restriction is a content-based restriction subject to strict scrutiny.[3]

Although the government-backed debt exemption may be the most blatant content preference enumerated in Section 227(b), Congress authorized the FCC to establish additional content-based exemptions that compound the problem. *See* 47 U.S.C. § 227(b)(2)(B) ("The Commission . . . may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe . . . calls that are not made for a commercial purpose

---

[3]     *Gallion v. Charter Communs., Inc.*, 287 F. Supp. 3d 920 (C.D. Cal. 2018); *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128 (D. Minn. 2017); *Holt v. Facebook Inc.*, 240 F. Supp. 3d 1021 (N.D. Cal. 2017); *Brickman v. Facebook*, 230 F. Supp. 3d 1036 (N.D. Cal. 2017); *Mejia v. Time Warner Cable, Inc.*, Nos. 15-cv-6445, 15-cv-6518, 2017 U.S. Dist. LEXIS 120445 (S.D.N.Y. Aug. 1, 2017); *Am. Ass'n of Political Consultants v. Sessions*, No. 5:16-cv-252, 323 F. Supp. 3d 737 (E.D.N.C. 2018), *rev'd on other grounds by AAPC*, 2019 U.S. Dist. LEXIS 12127.

and such classes or categories of calls made for commercial purposes as the Commission determines . . . ); § 227(b)(2)(C) (Commission may "exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular service that are not charged to the called party . . . ."). As a threshold matter, Congress's authorization for the agency to exercise unbridled discretion in restricting speech based on its content is invalid under the First Amendment. *See, e.g.*, *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 755-56, 769 (1988). Such unbridled discretion to impose content-based distinctions under Section 227(b) cannot validly be vested in an administrative agency. *See, e.g.*, *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1042 (9th Cir. 2009) (unbridled discretion doctrine applies to "legislative," "executive," and "administrative" actors); *see also Hopper v. City of Pasco*, 241 F.3d 1067, 1079 (9th Cir. 2001) (invalidating policy granting officials discretion to remove controversial artwork from public space).

Unsurprisingly, the FCC has taken this free rein to discriminate based on the content of calls and run with it. It has now exercised this authority to impose content-based exemptions and established exemptions for package-delivery notifications;[4] billing calls related to collect calls placed by inmates;[5] calls by financial institutions relating to data breaches and money transfers;[6] and "appointment and exam

---

[4]     *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Cargo Airline Association Petition for Expedited Declaratory Ruling*, Order, CG Docket No. 02-278, 29 FCC Rcd 3432, ¶ 18 (2014).

[5]     *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, CG Docket No. 02-278, WC Docket No. 07-135, 30 FCC Rcd 7961, ¶¶ 44-45 (2015).

[6]     *Id.* ¶¶ 129-138.

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

confirmations and reminders, wellness checkups, hospital pre-registration instructions," and other healthcare-related calls.[7]

PRA' liability hinges precisely on the content-based distinctions embedded in Section 227(b). If PRA placed calls seeking to collect Plaintiff's private, government-backed debt, or concerning package deliveries, healthcare appointments, or money transfers, those messages would be free from liability. But if PRA placed calls to collect on a debt originally incurred to Target, it could be liable depending on the equipment used by PRA and whether Plaintiff had consented to receiving such calls. Because the statute and implementing regulations provide for content-based discrimination of speech, this Court must review the statute under strict scrutiny, keeping in mind that "[c]ontent-based regulations are, after all, some of the most reviled by the First Amendment." *Siefert v. Alexander*, 608 F.3d 974, 994 (7th Cir. 2010) (Rovner, J., dissenting).

## II.     The call restrictions cannot withstand strict scrutiny.

"Content-based regulations are presumptively invalid," *Hoye v. City of Oakland*, 653 F.3d 835, 853 (9th Cir. 2011), and therefore "almost always violate the First Amendment." *DISH Network Corp. v. FCC*, 653 F.3d 771, 778 (9th Cir. 2011). To pass the rigorous standard of review that is strict scrutiny, the speech restriction must be narrowly tailored to advance a compelling government interest. *See McCutcheon v. FEC*, 572 U.S. 185, 199 (2014); *see also Reed*, 135 S. Ct. at 2231. The call restrictions do not advance a compelling government interest, nor are they narrowly tailored.

### A.     The call restrictions do not advance a "compelling" government interest.

Congress enacted the ATDS restriction to protect residential privacy interests. *See* S. Rep. No. 102-178, at 1, 5 (1991) (purpose of TCPA is to protect "privacy

---

[7]       *Id.* ¶¶ 146-48.

DEFENDANT'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR JUDGMENT
ON THE PLEADINGS

interests"); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (discussing purposes of TCPA that included invasion of privacy resulting from calls to private residences).  However, the Supreme Court has never held that such a privacy interest can justify a content-based restriction.  *Cf. Kirkeby v. Furness*, 92 F.3d 655, 659 (8th Cir. 1996) ("[T]he Supreme Court has never held that [residential privacy] is a compelling interest . . . and we do not think that it is.").

In the two principal cases on the issue, the Supreme Court held that residential privacy is a "significant government interest" that could support a *content-neutral* residential picketing restriction.  *See Frisby v. Schultz*, 487 U.S. 474, 484 (1988). However, it also recognized that residential privacy could *not* support a *content-based* residential picketing restriction containing a single narrow exemption for labor-related picketing, as the government "may protect individual privacy by enacting . . . regulations applicable to all speech *irrespective of content*."  *Carey v. Brown*, 447 U.S. 455, 465, 470 (1980) (emphasis in original); *see also Perry v. L.A. Police Dep't*, 121 F.3d 1365, 1369 (9th Cir. 1997) (confirming that *Carey* recognized a "substantial interest in protecting residential privacy").  The Ninth Circuit has observed that *Frisby* and cases like it discussing the interest in "tranquility[] and privacy of the home" "do not sanction content-based restrictions," but instead "only accept the dignity and privacy rationale as a sufficiently strong governmental interest to justify a content-neutral time, place and manner restriction."  *Hoye*, 653 F.3d at 852.  Indeed, the content-based exemptions themselves, which allow for a large number of intrusions on consumer's privacy, confirm that privacy is not a compelling interest.  *See, e.g., Nat'l Advert. Co. v. City of Orange*, 861 F.2d 246, 249 (9th Cir. 1988) (the government's "allowance of some billboards [is] evidence that its interests in traffic safety aesthetics . . . [fall] shy of 'compelling'").

Finally, even if such a privacy interest could be considered compelling, the distinctions drawn by the law must serve the compelling interest in the specific factual context.  *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 424

(1993) (concluding that city ordinance was unconstitutional where "the [content-based] distinction bears no relationship whatsoever to the particular interests that the city has asserted"); *Carey*, 447 U.S. at 461-62 (1980) (under strict scrutiny, "the justifications offered for any distinctions [the restriction] draws must be carefully scrutinized"); *Serv. Emps. Int'l Union v. Fair Political Practices Comm'n*, 955 F.2d 1312, 1321 (9th Cir. 1992) ("[T]he crucial question is whether there is an appropriate governmental interest suitably furthered by the differential treatment."). The exemptions to the call restrictions allow a large-volume of unconsented-to calls bearing no relationship to the privacy of the debtors, demonstrating the distinctions fail strict scrutiny.

### B.    The call restrictions are not narrowly tailored.

Even assuming, *arguendo*, that residential privacy is a compelling interest, the call restrictions are not narrowly tailored to further that interest. In conducting a strict scrutiny review, the Court is obliged to examine the speech restriction for a fatal infirmity that is commonly referred to as "underinclusiveness." *See Reed*, 135 S. Ct. at 2232. A speech restriction is fatally underinclusive where it "leaves appreciable damage to th[e] supposedly vital interest unprohibited." *Id.*; *see also Williams-Yulee v. Florida Bar*, 135 S. Ct. 1656, 1668 (2015) (recognizing that speech restrictions with vast carveouts can undermine compelling government interest). The exemptions to the call restrictions are fatally underinclusive because they authorize many of the intrusive calls the call restrictions were enacted to prohibit.

As the Fourth Circuit recently recognized, "the exemption applies in a manner that runs counter to the privacy interests that Congress sought to safeguard." *AAPC*, 2019 U.S. App. LEXIS 12127, at *18. The Fourth Circuit's examination of the swath of unprotected consumers is particularly enlightening. *See id.* at *18-19. According to the FCC, the federal government had either guaranteed or was owed nearly eighty percent of all outstanding student loan debt by the end of fiscal year 2016. *See In re Rules & Regulations Implementing the TCPA*, 31 FCC Rcd 9074, 9077 n.28

DEFENDANT'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR JUDGMENT
ON THE PLEADINGS

(Aug. 11, 2016).  The FCC has reported that 41 million borrowers owed over one trillion dollars in federal student loans.  *See id.*  And, student loan debt is but one category of debt owed to or guaranteed by the federal government.  *See id.* at 9077-78.  Accordingly, under the government-backed debt exemption, third parties can make otherwise prohibited calls to millions of debtors.  As such, "it is woefully underinclusive and does not serve the compelling governmental interest of protecting privacy in a narrow fashion."  *AAPC*, 2019 U.S. App. LEXIS 12127, at *19.  Rather than advancing a compelling government interest, the "exemption [] erodes the privacy protections that the automated call ban was intended to further."  *Id.*; *see also Reed*, 135 S. Ct. at 2231 ("The Town cannot claim that placing strict limits on temporary directional signs is necessary to beautify the Town while . . . allowing . . . other types of signs that create the same problem.").

This exemption causes wider "appreciable harm" to the asserted governmental interest than courts have found untenable.  For example, in *Carey*, the Supreme Court invalidated a restriction on residential picketing based on a single, narrow exemption for labor picketing, even though it still protected privacy in the vast majority of cases, because "nothing in the content-based labor-nonlabor distinction has any bearing whatsoever on privacy."  447 U.S. at 465.  Similarly, in *Perry*, the Ninth Circuit recognized that a restriction on solicitations on the Venice Beach Boardwalk "would aid" the government's goals, but the restriction still failed *intermediate scrutiny* because it contained a single narrow exemption for nonprofit speakers without any "evidence that those without nonprofit status [were] any more cumbersome upon fair competition or free traffic flow than those with nonprofit status."  121 F.3d at 1370.  Likewise, in *Italian Colors Rest. v. Becerra*, California's anti-surcharging statutes contained only narrow exceptions for payments to government entities and utilities, but the statute failed *intermediate scrutiny* despite applying to almost all surcharged payments because there was "no explanation why these exempt surcharges are any less harmful or deceptive than the surcharges plaintiffs seek to impose."  878 F.3d at

DEFENDANT'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR JUDGMENT
ON THE PLEADINGS

1178 (9th Cir. 2018).  Here, the exemptions for government-backed debt collection calls and other FCC-favored content exempt a far broader amount of speech than the narrow exemptions disapproved of in those cases.   The exemptions permit unrestricted calls to millions of borrowers and unconsented-to calls relating to millions of package deliveries, banking transactions, and healthcare appointments. These numerous and broad exemptions render the restrictions "so woefully underinclusive as to render belief in that [privacy interest] a challenge to the credulous." *Republican Party v. White*, 536 U.S. 765, 780 (2002).

Any purported tailoring here is substantially broader than what the Supreme Court found sufficiently narrow to survive strict scrutiny in *Williams-Yulee v. Fla. Bar*, 135 S. Ct. 1656, 1666 (2015).  There, the Supreme Court upheld a restriction on direct judicial fundraising that exempted other speech (indirect campaign committee fundraising), as narrowly tailored to an interest in preserving judicial resources. Critically, the exempted speech posed a "categorically different and [less] severe risk" of harm than the restricted speech.  *Id.*  But, no such distinction exists here. Section 227(b)(1)(A)(iii) is tailored to exempt from liability calls that raise identical (if not greater) privacy concerns as calls that remain prohibited.   Indeed, this "tailoring" is particularly perverse in that it exempts from liability "commercial" debt collection messages, while restricting core protected speech, including political speech.   The First Amendment does not tolerate this result.   *Desert Outdoor Advertising v. City of Moreno Valley*, 103 F.3d 814, 819 (9th Cir. 1996) (recognizing that "an ordinance is invalid if it imposes greater restrictions on noncommercial than on commercial" speech); *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 513, 516 (1981).

Accordingly, these exemptions "fail[] to satisfy strict scrutiny, constitute an unconstitutional content-based restriction on speech, and therefore violate[] the Free

DEFENDANT'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR JUDGMENT
ON THE PLEADINGS

Speech Clause." *AAPC*, 2019 U.S. App. LEXIS 12127, at *22-23.[8]

### III.   The exemptions cannot be severed to salvage the constitutionality of the call restrictions.

Because the call restriction is an unconstitutional encroachment on the First Amendment, the Court must strike it down in its entirety.  The Supreme Court has ruled that the appropriate remedy for a speech restriction with an impermissible content-based exemption is to set aside the restriction, not to set aside the exemption. For example, in *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972), the Supreme Court considered an ordinance that prohibited school picketing but contained a content-based exemption for labor-related picketing.  In finding the ordinance violated the Constitution, the Supreme Court invalidated the entire picketing ordinance, not just the content-based exemption.  *Id.* at 102.  Similarly, in *Carey*, the Court was confronted with a residential picketing prohibition that exempted labor-related picketing.  447 U.S. 455.  Again, the Court invalidated the entire ordinance, rather than just the content-based exemption.  *Id.* at 471.  Likewise, in *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221 (1987), the Court ruled that a taxing scheme was unconstitutional where it taxed magazines but exempted certain types of magazines based on content.  Rather than invalidating the content-based tax exemptions, the Court invalidated the application of the tax to magazines. *Id.* at 234.  The same result should obtain here.

Applying severance to the First Amendment runs contrary to the remedy consistently applied in constitutional litigation, which provides for "extension" of the right abridged rather than "nullification" of the special exception, absent a "clear[]

---

[8]     The Fourth Circuit correctly held that the government-backed debt exemption constitutes a content-based restriction that fails strict scrutiny.  However, the Fourth Circuit's brief discussion of the severability issue erroneously failed to address severability in the context of the First Amendment and the abridgment, rather than the expansion, of free speech that severance would create.  *See AAPC*, 2019 U.S. App. LEXIS 12127, at *24-25.

DEFENDANT'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR JUDGMENT
ON THE PLEADINGS

express[ion] of a congressional preference for nullification." *Heckler v. Matthews*, 465 U.S. 728, 739 n.5 (1984); *see also Playboy*, 529 U.S. at 823 ("The appropriate remedy was not to repair the statute, it was to enjoin the speech restriction."); *Carey*, 447 U.S. at 459 n.2 (affirming lower court's conclusion that the "labor dispute exception [from a general ban on picketing] was not severable" given that severance would *expand liability* under the statute); *Mosley*, 408 U.S. 92, 102 (similar). Severance is particularly dangerous in the First Amendment context,[9] because it would effectively "require[e] the [Government] to restrict more speech than it currently does." *Rappa v. New Castle Cnty.*, 18 F.3d 1043, 1072-73 (3d Cir. 1994) (Becker & Alito, JJ.). In *Rappa*, the Third Circuit concluded that, in the First Amendment context, the "severability inquiry . . . has a constitutional dimension" and therefore "the proper remedy for content discrimination generally cannot be to sever the statute so that it restricts more speech than it did before." *Id.*

The Ninth Circuit's decision in *Perry* is particularly instructive. There, the City of Los Angeles enacted an ordinance prohibiting solicitations on the Venice Beach boardwalk. 121 F.3d at 1367. Later, in an effort to comply with a Ninth Circuit decision, the City added an exemption for non-profit organizations. *Id.* In considering a First Amendment challenge to the ordinance, the Ninth Circuit found this exemption fatal to the constitutionality of the ordinance. *Id.* at 1370. Rather than excising the exemption however, the Ninth Circuit declared the statute

---

[9]      During oral argument before the Ninth Circuit in the appeal in *Gallion*, the Court recognized the distinct framework that applies in the First Amendment context. In response to the first and only case cited by the appellees in support of their argument that the government-backed debt exemption could be severed to save the statute, Circuit Judge McKeown quickly retorted, "was that a First Amendment case?" (Oral Argument at 21:11, *Gallion v. Charter Communications*, No. 18-55667 (9th Cir. March 11, 2019), https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000015354.) It was not. And, later in the argument, the panel pressed the intervenor-appellee on its response to the argument that severability did not apply in First Amendment cases. (*Id.* at 25:00-25:28.)

DEFENDANT'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR JUDGMENT
ON THE PLEADINGS

1    "constitutionally deficient on its face." *Id.* at 1371. Similarly, here, after-added

2    exemptions render the TCPA "constitutionally deficient on its face." And, like in

3    *Perry*, this cannot be remedied simply by severing the exemptions.

4         Severance also contravenes the well-established principle that courts must

5    employ remedies that "create incentives to raise [constitutional] challenges." *See*

6    *Lucia v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018). In a free-speech case, severance

7    would create little incentive to challenge a discriminatory restriction on speech, if the

8    only remedy that could obtain is the expansion of that restriction to cover more

9    speech. In essence, severance would largely immunize unconstitutional content-

10   based restrictions from review. And, Congress should not be able to immunize its

11   restrictions on free speech simply by including a severability provision.

12        Invalidating the restriction is the appropriate remedy here given the sheer

13   number of content-based exemptions at issue. Picking and choosing which

14   exemptions to invalidate would require an exercise of "editorial freedom . . . [that]

15   belongs to the Legislature, not the Judiciary." *Free Enter. Fund v. Pub. Co.*

16   *Accounting Oversight Bd.*, 561 U.S. 477, 510 (2010). The exemptions to Section

17   227(b)(1)(A)(iii) are scattered throughout the United States Code and Code of

18   Federal Regulations. The statute exempts calls "made solely to collect a debt owed

19   to or guaranteed by the United States." § 227(b)(1)(A)(iii). In addition, it grants the

20   FCC the power to "exempt [calls] from the requirements of [§ 227(b)(1)(A)(iii)]."

21   In exercising this authority, the FCC has exempted certain calls regarding "financial

22   and healthcare issues," *Rules and Regulations Implementing the TCPA*, 30 FCC Rcd

23   7961, 8023, 8026, 8030 (2015), and certain automated messages made by schools

24   and utility companies. *Rules and Regulations Implementing the TCPA*, 31 FCC Rcd

25   9054, 9061 (2016). An effort to invalidate these exemptions would require the Court

26   to "blue-pencil" a complex statutory and regulatory scheme. *See Free Enter. Fund*,

27   561 U.S. at 510. Additional questions would be raised as to which content-based

28   exemptions to invalidate, and whether those exemptions are severable from other

DEFENDANT'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR JUDGMENT
ON THE PLEADINGS

provisions of the relevant regulation.  Rewriting the statute and a host of federal regulations contradicts the courts' limited role of judicial review.  *See Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988) (refusing to "rewrite" statute "to conform it to constitutional requirements").  The only proper remedy is to hold the statutory restriction itself invalid.

CONCLUSION

Because the TCPA restricts speech based on the content of the speech without being narrowly tailored to advance a compelling government interest, it is unconstitutional and cannot impose liability on PRA for the calls here.  Accordingly, PRA respectfully requests that the Court enter an Order (1) declaring Section 227(b)(1)(A)(iii) unconstitutional; (2) entering judgment in favor of PRA; and (3) granting PRA such further relief as the Court deems appropriate.

Dated:    May 20, 2019          TROUTMAN SANDERS LLP


                                By: */s/ Jessica R. Lohr*
                                Jessica R. Lohr

                                *Attorney for Defendant*
                                *Portfolio Recovery Associates, LLC*