Jonathan A. Stieglitz, Esq.
(SBN 278028)
**THE LAW OFFICES OF**
**JONATHAN A. STIEGLITZ**
11845 W. Olympic Blvd., Ste. 800
Los Angeles, California 90064
Tel: (323) 979-2063
Fax: (323) 488-6748
Email: jonathan.a.stieglitz@gmail.com

Chris R. Miltenberger (TX Bar # 14171200)
chris@crmlawpractice.com
**Law Office of Chris R. Miltenberger, PLLC**
1360 N. White Chapel, Suite 200
Southlake, Texas 76092
Phone: (817) 416-5060
Fax: (817) 416-5062
***Admitted Pro Hac Vice***

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## Central DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| **Chris Parker**<br>Plaintiff<br><br>**Portfolio Recovery Associates, LLC**<br><br>Defendant | Case No. 8:18-cv-02103-JVS-JDE<br><br>**Plaintiff Chris Parker's Memorandum in Support of His Response to Defendant's Motion for Judgment on the Pleadings**<br><br>Date:  July 15, 2019<br>Time:  1:00 p.m.<br>Judge: Hon. James V. Selna<br>Courtroom: 10C |

1

## TABLE OF CONTENTS

2

I.      SUMMARY OF ARGUMENT ...............................................................1

II.     BACKGROUND...............................................................................1

III.    ARGUMENT AND AUTHORITIES .................................................3

        A.    Government Debt Exemption Should be Severed ......................3

        B.    PRA Lacks Standing.....................................................................5

        C.    Alternatively, Pre-Amendment TCPA Applies..........................6

IV.     CONCLUSION ................................................................................9

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n,*
  923 F.3d 159 (4th Cir. 2019) ..................................................................2, 5

*Beaver v. Tarsadia Hotels,*
  816 F.3d 1170 (9th Cir. 2016) ................................................................7, 9

*Duguid v. Facebook, Inc.,*
  No. 17-15320, 2019 WL 2454853 (9th Cir. June 13, 2019) ..............1, 3, 6

*Gallion v. Charter Commc'ns Inc.,*
  287 F.Supp.3d 920 (C.D.Cal. 2018 ............................................................2

*Gentleman v. Massachusetts Higher Educ. Assistance Corp.,*
  272 F. Supp. 3d 1054 (N.D. Ill. 2017)........................................................8

*Gomez v. Campbell-Ewald Co.,*
  768 F.3d 871 (9th Cir. 2014), *aff'd,* 136 S. Ct. 663, 193 L. Ed. 2d 571
  (2016), *as revised* (Feb. 9, 2016) ...........................................................8, 9

*Moser v. Fed. Commc'ns Comm'n,*
  46 F.3d 970 (9th Cir. 1995) ....................................................................8, 9

*Silver v. Pennsylvania Higher Educ. Assistance Agency,*
  706 F. App'x 369 (9th Cir. 2017), *cert. denied sub nom. Pennsylvania*
  *Higher Educ. Assistance v. Silver*, 139 S. Ct. 88, 202 L. Ed. 2d 27 (2018) ...........7, 9

*Strickler v. Bijora, Inc.,*
  No. 11 CV 3468, 2012 WL 5386089 (N.D. Ill. Oct. 30, 2012) ..................8

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) ...................................................................................8

*Woods v. Santander Consumer USA Inc.,*
  No. 2:14-CV-02104-MHH, 2017 WL 1178003 (N.D. Ala. Mar. 30, 2017.) ........7, 8, 9

*Wreyford v. Citizens for Transp. Mobility, Inc.,*
  957 F.Supp.2d 1378 (N.D. Ga. 2013).........................................................8

1

**Statutes**

2

47 U.S.C. § 227(b)(1)(A) ........................................................................2

3

47 U.S.C. § 227(b)(1)(A)(iii)................................................................1, 2

4

5

Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a), 129 Stat. 584,
     588 (2015)............................................................................................2

6

Interstate Land Sales Full Disclosure Act ..................................................7

7

Pub. L. No. 102-243, § 2(12)...................................................................9

8

Telephone Consumers Protection Act ...............................................*passim*

9

10

**Other Authorities**

11

S. Rep. No. 102-178, 1 (1991) ..................................................................8

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff, Chris Parker ("**Plaintiff**" or "**Parker**"), hereby submits this memorandum in support of his response to Portfolio Recovery Associates, LLC's ("**Defendant**" or "**PRA**") Motion for Judgment on the Pleadings (or, alternatively, Motion for Summary Judgment) (Docs. 32, 32-1)("**Motion**").

## I.     SUMMARY OF ARGUMENT

On June 13, 2019, the Ninth Circuit Court of Appeals ruled unequivocally that the government debt exemption added to the autodialing ban of the Telephone Consumers Protection Act ("**TCPA**") in November 2015 can be excised from the TCPA, leaving the rest of the statute constitutional. Thus, Defendant's Motion fails as a matter of law and should be denied by this Court.  *See Duguid v. Facebook, Inc.,* No. 17-15320, 2019 WL 2454853, *8 (9th Cir. June 13, 2019).

Even if the Ninth Circuit had not found that the government debt exemption is severable, Defendant's Motion fails as PRA has no standing to challenge the constitutionality of the post-amendment TCPA.  All calls made to Parker by PRA were made before July 2011, years before the amendment to the TCPA adding the government debt exemption was enacted. *See* Doc. 31-1, ¶ 8.  Under prevailing Ninth Circuit law, Defendant is not vested in a sufficient personal stake in the post-amendment TCPA to challenge its constitutionality.  *See Duguid,* 2019 WL 2454853, at *5.  Therefore, Defendant's Motion should be denied by this Court.

## II.     BACKGROUND

As relevant here, Section 227(b)(1)(A)(iii) of the TCPA prohibits the use of automated dialing systems to make a call or send a text message to a cell phone user without the user's prior express consent, unless the call or message is initiated for an emergency purpose or to collect a debt owed to or guaranteed by the United States. Plaintiff claims that PRA violated the Act by using an automated telephone dialing system to call his mobile phone, without his consent and in an effort to collect consumer debts, not debts owed to or guaranteed by the United States.

1    Enacted in 1991, the TCPA was a congressional response to American
2    consumers' reactions to intrusive and unwanted phone calls. As a result of
3    congressional concern over automated phone calls, the automated call ban prohibits
4    phone calls to cell phones that use "any automatic telephone dialing system or an
5    artificial or prerecorded voice." *See* 47 U.S.C. § 227(b)(1)(A). The automated call
6    ban does not, however, reach all calls made with an ATDS.  The TCPA authorizes
7    automated phone calls to cell phones if they satisfy one of the statutory exemptions
8    specified in the automated call ban. When it was enacted in 1991, the TCPA created
9    two statutory exemptions to the ban, both of which are still in effect. First, if an
10   automated call to a cell phone is initiated "for emergency purposes," it does not
11   contravene the automated call ban (the "**emergency exemption**"). *See id.* Second, if
12   an automated call is made to a cell phone with "the prior express consent of the called
13   party," it also does not violate the ban (the "**consent exemption**"). *See id.*

14    For more than twenty years, the emergency and consent exemptions were the
15   only statutory exemptions to the automated call ban. "[F]rom 1991 until 2015, the
16   automated call ban was 'fully operative.'" *Am. Ass'n of Political Consultants, Inc. v.*
17   *Fed. Commc'ns Comm'n,* 923 F.3d 159, 171 (4th Cir. 2019)(citing and quoting *Free*
18   *Enter. Fund*, *v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 509(2010)
19   (citations and internal quotation marks omitted)). In 2015, however, Congress enacted
20   a third statutory exemption, thereby excepting from the ban all calls to cell phones
21   "made solely to collect a debt owed to or guaranteed by the United States" (the
22   "**government debt exemption**").   *See* Bipartisan Budget Act of 2015, Pub. L. No.
23   114-74, § 301(a), 129 Stat. 584, 588 (2015) (amending 47 U.S.C. §
24   227(b)(1)(A)(iii)).

25    Shortly after Congress enacted the government debt exemption, robo-calling
26   businesses began to file dispositive motions arguing that the government debt
27   exemption, and, thus, the entire TCPA automated call ban of Section 227(b)(1)(A),
28   was unconstitutional. *See,e.g, Gallion v. Charter Commc'ns Inc.,* 287 F.Supp.3d 920

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(C.D.Cal. 2018)(In September 2017 defendant moved for judgment on the pleadings alleging that the TCPA automated call ban violated the Free Speech Clause and was unconstitutional).  PRA has followed suit bringing its Motion before the Court.

## III.    ARGUMENT AND AUTHORITIES

### A. The Ninth Circuit has ruled that the government debt exemption added to the TCPA in November 2015 can be excised from the TCPA, leaving the rest of the statute constitutional.

On June 13, 2019, the Ninth Circuit Court of Appeals ruled unequivocally that the government debt exemption added to the TCPA in November 2015 can be excised from the TCPA, leaving the rest of the statute constitutional. *See Duguid v. Facebook, Inc.,* No. 17-15320, 2019 WL 2454853, *8 (9th Cir. June 13, 2019). Although the court held that the government debt exemption "is content-based and insufficiently tailored to advance the government's interests in protecting privacy or the public fisc," thus failing the scrutiny applied, it held that such exemption "is severable from the TCPA." *Id.* (citation omitted).  In so holding, the Ninth Circuit ruled as follows:

Congressional    intent    is    the    touchstone    of    severability analysis. *See Regan v. Time, Inc.*, 468 U.S. 641, 653, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984). Congress simplifies our inquiry when, as here, it speaks directly to severability: "If any provision of this chapter [containing the TCPA] ... is held invalid, the remainder ... shall not be affected thereby." 47 U.S.C. § 608. While not dispositive, this unambiguous language endorsing severability relieves us of a counterfactual inquiry as to congressional intent and creates a presumption of severability absent "strong evidence that Congress intended otherwise." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987).

History reaffirms what Congress said. The TCPA has been "fully operative" for more than two decades. *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 509, 130 S.Ct. 3138, 177 L.Ed.2d 706 (2010). Then, with little fanfare, Congress appended the comparatively modest debt-collection exception as a small portion of the 2015 budget bill. The newly enacted exception did not suddenly and silently become so integral to the TCPA that the statute could not function without it. *See Gresham*, 866 F.3d at 855 (severing a newly enacted, content-based exception to Minnesota's robocalling statute because "[t]he balance of the statute pre-existed the amendment, and we presume that the Minnesota legislature would have retained the pre-existing statute"); *cf. Rappa v. New Castle County*, 18 F.3d 1043, 1073 (3d Cir. 1994) ("[T]he proper remedy for content discrimination *generally* cannot be to sever the statute so that it restricts more speech than it did before—at least *absent quite specific evidence of a legislative preference* for elimination of the exception." (emphases added)).

Excising the debt-collection exception preserves the fundamental purpose of the TCPA and leaves us with the same content-neutral TCPA that we upheld—in a manner consistent with *Reed*— in *Moser* and *Gomez*.

*Id.*

By its *Duguid* ruling, the Ninth Circuit joins the only other federal court of appeals, the Fourth Circuit, to have addressed the issue of the constitutionality of the post-amendment TCPA.  On April 24, 2019, the Fourth Circuit also ruled that the entire TCPA is NOT unconstitutional and that the offending government debt

exemption clause could be severed from the remaining provisions of the TCPA. *See Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n,* 923 F.3d 159, 171-72 (4th Cir. 2019).   In *Political Consultants,* the Fourth Circuit first analyzed the debt-collection exemption and found under strict scrutiny such exemption violated the Free Speech Clause of the Constitution. *See id.* at 168-70.   However, the Fourth Circuit then went on to analyze whether the offending debt-collection exemption could be severed from the rest of the automated call ban provisions and, thus, allow the remainder of the automated call ban to survive constitutional scrutiny. The Fourth Circuit so ruled, stating that "the explicit directives of the Supreme Court and Congress strongly support a severance of the debt-collection exemption from the automated call ban" and that "the ban can operate effectively in the absence of the debt-collection exemption, which is clearly an outlier among the statutory exemptions." *Id.* at 171. The Fourth Circuit Court went on to say that "a severance of the debt-collection exemption will not undermine the automated call ban" and recognized that "[f]or twenty-four years, from 1991 until 2015, the automated call ban was 'fully operative.'" *Id.* (citation omitted). Thus, the court allowed the rest of the TCPA automated call ban under which the plaintiff had sued to stand under constitutional scrutiny.  *Id.*

Therefore, pursuant to controlling Ninth Circuit precedent and supporting Fourth Circuit precedent, Defendant's Motion fails as a matter of law and should be denied by this Court. [1]

### B. Parker's calls from PRA at issue all occurred before July 2011, long before the government debt exemption was enacted in 2015; therefore, Defendant has no standing to challenge the constitutionality of the post-amendment TCPA.

Even if the Ninth Circuit had not found that the government debt exemption is

---

[1] As stated previously, the debt upon which PRA made calls to Plaintiff are consumer debts, not debt owed to or guaranteed by the United States.

severable, Defendant's Motion fails as PRA has no standing to challenge the constitutionality of the post-amendment TCPA.  All calls made to Parker by PRA were made before July 2011, years before the amendment to the TCPA adding the government debt exemption was enacted. *See* Doc. 31-1, ¶ 8.  Under prevailing Ninth Circuit law, Defendant is not vested in a sufficient personal stake in the post-amendment TCPA to challenge its constitutionality.  *See Duguid,* 2019 WL 2454853, at *5.

In *Duguid*, the Ninth Circuit first addressed whether defendant Facebook even had standing to challenge the constitutionality of the post-amendment TCPA because the named plaintiff alleged TCPA violations that predated the government debt exemption enactment.  *Id.*  The Ninth Circuit found that Facebook had such standing only because the plaintiff "***also*** [sought] damages on behalf of a putative class for violations that occurred in part in 2016, as well as forward-looking injunctive relief based on the post-amendment TCPA" and, therefore,  "[t]he class allegations and request for injunctive relief vest[ed] Facebook with a sufficient personal stake in the post-amendment TCPA to challenge its constitutionality." *Id.* (emphasis added) (citations omitted).

In the case at hand, Plaintiff is not seeking to represent anyone other than himself in this action, nor is he seeking an injunction against PRA.  Because Plaintiff's offending calls were all made before the government debt exemption was enacted, under the teachings of *Duguid*, PRA is not vested in a sufficient personal stake in the post-amendment TCPA to challenge its constitutionality.  *See id.* Therefore, Defendant PRA's Motion should be denied by this Court.

> **C. Alternatively, because Parker's calls from PRA at issue all occurred before the government debt exemption was enacted in 2015, this Court should apply the pre-amendment version of the TCPA to such calls and find the Autodialer Restriction constitutional as to those calls.**

Even if this Court finds that PRA has standing to challenge the

constitutionality of the post-amendment TCPA, which Plaintiff asserts it does not, and even if this Court chooses not to follow Ninth Circuit precedent and sever the government debt exemption, leaving the rest of the TCPA constitutionally viable, this Court should apply the pre-amendment version of the TCPA to this case and find the TCPA constitutional as to PRA's calls at issue. *See Woods v. Santander Consumer USA Inc.,* No. 2:14-CV-02104-MHH, 2017 WL 1178003, at *3 (N.D. Ala. Mar. 30, 2017.)(The court refused to address the effect of the government-debt exemption on the constitutionality of the TCPA because the offending calls were made before Congress enacted the government debt exemption; instead the court followed several courts who had upheld the pre-amendment version of the TCPA as a "valid, content-neutral restriction on speech.").  The *Woods* court applied the pre-amendment version of the TCPA because of the "'presumption against retroactive legislation ... deeply rooted in our jurisprudence[.]'" *Id.* (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) and *Fikes v. Wal-Mart, Inc.*, 322 Fed. Appx. 882, 883 n. 1 (11th Cir. 2009) (discussing the presumption against retroactive application of the 2009 amendments to the ADA and analyzing the plaintiff's claims under "the ADA as it was in effect at the time of the alleged discrimination")).  *See also Silver v. Pennsylvania Higher Educ. Assistance Agency,* 706 F. App'x 369, 369–71 (9th Cir. 2017), *cert. denied sub nom. Pennsylvania Higher Educ. Assistance v. Silver*, 139 S. Ct. 88, 202 L. Ed. 2d 27 (2018)(Applying *Landgraf,* Court found that the TCPA case before it "involved a statutory personal injury claim that had accrued prior to the date Congress enacted the TCPA [government debt exemption] amendment at issue" and refused to apply it retroactively.); *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1187–88 (9th Cir. 2016) (refusing to retroactively apply amendment to Interstate Land Sales Full Disclosure Act [ILSA],  holding that amendment "would have retroactive effect because it would extinguish Defendants' liability under ILSA . . . [and deprive] Plaintiffs of a pre-existing cause of action");

*Gentleman v. Massachusetts Higher Educ. Assistance Corp.,* 272 F. Supp. 3d 1054, 1072–73 (N.D. Ill. 2017)(Court found that Congress had "expressed no clear intent that the 2015 amendment [to the TCPA] should be applied retroactively" and refused to apply it retroactively); *Bonner v. Home123 Corp*., No. 2:05-CV-146 PS, 2006 WL 1518974, at *7 (N.D. Ind. May 25, 2006)(Court found amendment to the FRCA did not apply to pre-amendment violations because to do so would extinguish the "right to bring a specific cause of action and the right to seek certain damages for such an action, which Plaintiffs possessed when they received the allegedly improper solicitations.").

As the *Woods* court pointed out, numerous courts have upheld the pre-amendment version of the TCPA as a valid, content-neutral restriction on speech under *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989). *Id.* at *4. *See, e.g., Gomez v. Campbell-Ewald Co.,* 768 F.3d 871, 876 (9th Cir. 2014), *aff'd,* 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016), *as revised* (Feb. 9, 2016); *Moser v. Fed. Commc'ns Comm'n,* 46 F.3d 970, 972 (9th Cir. 1995); *Strickler v. Bijora, Inc.,* No. 11 CV 3468, 2012 WL 5386089, at *5 (N.D. Ill. Oct. 30, 2012); *Lozano v. Twentieth Century Fox film Corp.,* 702 F.Supp.2d 999, 1011-12 (N.D.Ill. 2010); *Wreyford v. Citizens for Transp. Mobility, Inc.,* 957 F.Supp.2d 1378, 1380-82 (N.D. Ga. 2013)). Under *Ward,* a constitutional law may restrict the "time, place, or manner of protected speech, provided the restrictions . . . are narrowly tailored to serve a significant government interest, and that they leave open ample alternative channels for communication of the information." 491 U.S. at 791.

The pre-amendment version of the TCPA satisfies the intermediate scrutiny under *Ward*.  First, the pre-amendment TCPA served a significant government interest. Congress enacted the TCPA "to protect the privacy interests of ... telephone subscribers by placing restrictions on unsolicited, automated telephone calls[.]" S. Rep. No. 102-178, 1 (1991). Congress concluded in its findings that "[b]anning such

automated or prerecorded telephone calls[,] except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation ..., is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, § 2(12).

Second, the pre-amendment TCPA was narrowly tailored to serve the government's interest and left open ample alternative channels of communication. "As a means of protecting consumers from unwanted automated calls, the TCPA burden[ed] only the speech that the law was passed to prevent: 'uninvited calls to cellular phones, regardless of the content of the message.'" *Woods,* 2017 WL 1178003, at \*5 (quoting *Wreyford*, 957 F. Supp. 2d at 1381). Furthermore, the pre-amendment TCPA restrictions left open ample alternative channels by which a person may communicate his message. *Id.* "As the Court in *Moser* explained, nothing in the TCPA prohibit[ed] 'the use of taped messages introduced by live speakers[,] taped messages to which consumers have consented, [or] live solicitation calls.'" *Id.* (quoting *Moser*, 46 F.3d at 975). Thus, the pre-amendment TCPA was narrowly tailored to advance a significant government interest and left open ample alternative channels of communication; accordingly, it satisfies intermediate scrutiny under *Ward* and under 9th Circuit binding precedent. *See Gomez,* 768 F.3d at 876 (9th Cir. 2014); *Moser,* 46 F.3d at 972.

Because the pre-amendment TCPA survives the applicable scrutiny, and because Ninth Circuit precedent favors refusal to apply the post-amendment TCPA retroactively, Defendant's Motion should be denied. *See Silver,* 706 F. App'x at 369–71; *Beaver,* 816 F.3d at 1187–88.

## IV.    CONCLUSION

Due to the foregoing, Plaintiff respectfully requests that the Defendant's Motion be denied. This case should be allowed to follow its path to trial.

1

Dated June 20, 2019

**Law Office of Chris R. Miltenberger, PLLC**

2

3

By:   /s/ Chris R. Miltenberger

4

Chris R. Miltenberger

5

**Attorneys for Plaintiff**

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28